**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| **JULIETA GARIBAY, MARIA YOLISMA** | § | |
| **GARCIA, LORENA TULE-ROMAIN,** | § | |
| **ABRAHAM JOSUE ESPINOSA FLORES,** | § | |
| **VIRIDIANA TULE CARRIZALES, EFREN** | § | |
| **GOMEZ, ELENA KEANE, SOUTHWEST** | § | |
| **VOTER REGISTRATION PROJECT,** | § | |
| **MI FAMILIA VOTA EDUCATIONAL FUND,** | § | |
| **and LA UNION DEL PUEBLO ENTERO** | § | |
| | § | **Civil Action No.** |
| **vs.** | § | |
| | § | |
| **DAVID WHITLEY, in his official capacity** | § | |
| **as Texas Secretary of State, KEN PAXTON, in** | § | |
| **his official capacity as Texas Attorney General,** | § | |
| **GREG ABBOTT, in his official capacity as** | § | |
| **Governor of Texas, and CHERYL E.** | § | |
| **JOHNSON, Galveston County Tax Assessor-** | § | |
| **Collector, in her official capacity** | § | |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

This case is filed by U.S. citizens and registered voters of Texas who have been singled

out for investigation and removal from the voter rolls by the Texas Secretary of State because

they were born outside the United States.  Plaintiffs seek declaratory and injunctive relief to

protect the right of eligible citizens to vote and prevent Texas officials from taking action against

them because of their national origin.

## INTRODUCTION

1.    On January 25, 2019, the office of the Texas Secretary of State issued an Election Advisory

to county voter registrars announcing that it would send them "actionable information"

about registered voters who "provided documentation . . . showing that the person is not a

citizen of the United States."

2.     The Texas Secretary of State further instructed the registrars to use the information about the purported non-U.S. citizens for voter roll maintenance, including requiring the voters to provide documents to prove their U.S. citizenship.

3.     The Texas Secretary of State compiled its list of suspect voters from information provided by the Texas Department of Public Safety about individuals who were non-U.S. citizens in the past.   These individuals obtained driver's licenses or state identification cards when they were non-U.S. citizens authorized to live in the United States.   The Texas driver's licenses issued to lawful permanent resident immigrants are valid for six years, and during this time period many immigrants become eligible to naturalize and register to vote.

4.     The Texas Secretary of State is well aware that the 98,000 voters whose names he sent to counties as "Possible Non U.S. Citizens" include tens of thousands of naturalized U.S. citizens.   Since sending the records of naturalized citizen voters to the counties, the Secretary of State's office has contacted the counties to advise them that the data is flawed. However, the Secretary of State has neither withdrawn the list of suspect voters nor advised the counties to refrain from acting on the flawed information.  Galveston County officials acted on the Election Advisory and sent letters challenging the U.S. citizenship of registered voters whose names were sent to them from the Secretary of State.

5.     Plaintiffs seek a declaration that Defendants' targeting of them for investigation and removal from the voter rolls, based only on the fact that they were born outside the United States, violates the Fourteenth Amendment Equal Protection Clause and the federal Voting Rights Act.   Plaintiffs further seek damages and a declaration that Defendant Texas officials conspired to violate their rights by coordinating an unfounded voter purge campaign with threats of criminal prosecution aimed at naturalized citizen voters.

Plaintiffs further seek an injunction requiring Defendants to cease the purge by withdrawing the list of suspect voters and the challenge letters sent to them.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and § 1343 over Plaintiffs' causes of action under the United States Constitution and federal statutes. This Court may grant Plaintiffs' request for declaratory and injunctive relief under 28 U.S.C. §§ 2201 and 2202.

7.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because: (1) Defendant Johnson (in her official capacity) resides in Galveston, Texas, which is within the Southern District of Texas, (2) a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District, and (3) Plaintiffs Keane and Espinosa Flores reside in the Southern District of Texas and no real property is involved in this action.

## PARTIES

**Plaintiffs**

8.     Plaintiff Julieta Garibay is a Latina resident and registered voter of Travis County, Texas. Plaintiff Garibay is a naturalized U.S. citizen whose personal information appears on the list of persons identified as non-U.S. citizens provided by Defendant Whitley to Travis County as actionable information for investigation and removal from the voter rolls.

9.     After she became a naturalized U.S. citizen, Plaintiff Garibay registered to vote in Travis County, Texas.  Plaintiff Garibay voted in the 2018 midterm election.

10.    On or about January 28, 2019, the Secretary of State placed her personal information on his list of suspected non-U.S. citizens and sent it to Travis County.  Travis County informed

Plaintiff Garibay that it would review her information and make a determination on its next steps in the investigation of her voter registration.

11. Plaintiff Garibay is injured by having been placed on the Secretary of State's list of "Possible Non U.S. Citizens" and having her identifying information sent to the county in which she is registered to vote with instructions to use that information for investigation and possible removal from the voter rolls. Plaintiff Garibay is further injured by having been stigmatized as a person who might have registered to vote illegally.

12. Plaintiff Elena Keane is a Latina resident and registered voter of Galveston County, Texas. Plaintiff Keane is a naturalized U.S. citizen whose personal information appears on the list of persons identified as non-U.S. citizens provided by Defendant Whitley to Galveston County as actionable information for investigation and removal from the voter rolls.

13. Plaintiff Keane registered to vote after she became a U.S. citizen.  On or about January 29, 2019, Plaintiff Keane received a voter challenge letter from Galveston County tax assessor Cheryl Johnson stating "there is reason to believe you may not be a United States citizen" and that Plaintiff Keane would be purged from the voter rolls unless she provided a certified copy of her citizenship papers within 30 days.

14. On or about January 31, 2019 Plaintiff Keane received a second letter from Galveston County tax assessor Cheryl Johnson stating that Plaintiff Keane had received the first letter in error "as a result of notification to us by the Texas Secretary of State (SOS) that you may not be a United States citizen."

15. Plaintiff Keane is injured by having been placed on the Secretary of State's list of "Possible Non U.S. Citizens" and having her identifying information sent to the county in which she is registered to vote with instructions to use that information for investigation and possible

removal from the voter rolls. Plaintiff Keane is injured by having been subjected to an investigation into her citizenship status, and by the letter requiring her to prove her U.S. citizenship.  Plaintiff Keane is further injured by having been stigmatized as a person who might have registered to vote illegally.

16. Plaintiff Maria Yolisma Garcia is a Latina resident and registered voter of Dallas County, Texas.  Plaintiff Garcia is a naturalized U.S. citizen who obtained a Texas driver's license prior to becoming a U.S. citizen.  After she became a naturalized U.S. citizen, Plaintiff Garcia registered to vote. Plaintiff Garcia meets the description of individuals whose personal information appears on the list of persons identified as non-U.S. citizens provided by Defendant Whitley to Dallas County as actionable information for investigation and removal from the voter rolls. Plaintiff Garcia provided documentation to DPS showing that she was not a citizen of the United States when she first obtained a Texas driver's license. She also appears on the state voter rolls maintained by the Texas Secretary of State.

17. Upon information and belief, Plaintiff Garcia is injured by having been placed on the Secretary of State's list of "Possible Non U.S. Citizens" and having her identifying information sent to the county in which she is registered to vote with instructions to use that information for investigation and possible removal from the voter rolls. Plaintiff Garcia is further injured by having been stigmatized as a person who might have registered to vote illegally.

18. Plaintiff Lorena Tule-Romain is a Latina resident and registered voter of Dallas County, Texas.  Plaintiff Tule-Romain is a naturalized U.S. citizen who obtained a Texas driver's license prior to becoming a U.S. citizen.  After she became a naturalized U.S. citizen, Plaintiff Tule-Romain registered to vote. Plaintiff Tule-Romain meets the description of

individuals whose personal information appears on the list of persons identified as non-U.S. citizens provided by Defendant Whitley to Dallas County as actionable information for investigation and removal from the voter rolls. Plaintiff Tule-Romain provided documentation to DPS showing that she was not a citizen of the United States when she first obtained a Texas driver's license. She also appears on the state voter rolls maintained by the Texas Secretary of State.

19. Upon information and belief, Plaintiff Tule-Romain is injured by having been placed on the Secretary of State's list of "Possible Non U.S. Citizens" and having her identifying information sent to the county in which she is registered to vote with instructions to use that information for investigation and possible removal from the voter rolls. Plaintiff Tule-Romain is further injured by having been stigmatized as a person who might have registered to vote illegally.

20. Plaintiff Abraham Josue Espinosa Flores is a Latino resident and registered voter of Harris County, Texas. Plaintiff Espinosa Flores is a naturalized U.S. citizen who obtained a Texas driver's license prior to becoming a U.S. citizen.  Plaintiff Espinosa Flores registered to vote after becoming a U.S. citizen.  Plaintiff Espinosa Flores meets the description of individuals whose personal information appears on the list of persons identified as non-U.S. citizens provided by Defendant Whitley to Harris County as actionable information for investigation and removal from the voter rolls. Plaintiff Espinosa Flores provided documentation to DPS showing that he was not a citizen of the United States when he first obtained a Texas driver's license. He also appears on the state voter rolls maintained by the Texas Secretary of State.

21. Upon information and belief, Plaintiff Espinosa Flores is injured by having been placed on the Secretary of State's list of "Possible Non U.S. Citizens" and having his identifying information sent to the county in which he is registered to vote with instructions to use that information for investigation and possible removal from the voter rolls. Plaintiff Espinoza Flores is further injured by having been stigmatized as a person who might have registered to vote illegally.

22. Plaintiff Viridiana Tule Carrizales is a Latina resident and registered voter of Bexar County, Texas.  Plaintiff Tule Carrizales is a naturalized U.S. citizen who obtained a Texas driver's license prior to becoming a U.S. citizen.  After she became a naturalized U.S. citizen, Plaintiff Tule Carrizales registered to vote. Plaintiff Tule Carrizales meets the description of individuals whose personal information appears on the list of persons identified as non-U.S. citizens provided by Defendant Whitley to Bexar County as actionable information for investigation and removal from the voter rolls. Plaintiff Tule Carrizales provided documentation to DPS showing that she was not a citizen of the United States when she first obtained a Texas driver's license. She also appears on the state voter rolls maintained by the Texas Secretary of State.

23. Upon information and belief, Plaintiff Tule Carrizales is injured by having been placed on the Secretary of State's list of "Possible Non U.S. Citizens" and having her identifying information sent to the county in which she is registered to vote with instructions to use that information for investigation and possible removal from the voter rolls. Plaintiff Tule Carrizales is further injured by having been stigmatized as a person who might have registered to vote illegally.

24. Plaintiff Efren A. Gomez is a Latino resident and registered voter of Bexar County, Texas. Plaintiff Gomez is a naturalized U.S. citizen who obtained a Texas driver's license prior to becoming a U.S. citizen. Plaintiff Gomez registered to vote after becoming a U.S. citizen. Plaintiff Gomez meets the description of individuals whose personal information appears on the list of persons identified as non-U.S. citizens provided by Defendant Whitley to Bexar County as actionable information for investigation and removal from the voter rolls. Plaintiff Gomez provided documentation to DPS showing that he was not a citizen of the United States when he first obtained a Texas driver's license. He also appears on the state voter rolls maintained by the Texas Secretary of State.

25. Upon information and belief, Plaintiff Gomez is injured by having been placed on the Secretary of State's list of "Possible Non U.S. Citizens" and having his identifying information sent to the county in which he is registered to vote with instructions to use that information for investigation and possible removal from the voter rolls. Plaintiff Gomez is further injured by having been stigmatized as a person who might have registered to vote illegally.

26. Plaintiff Southwest Voter Registration Education Project ("SVREP") is a nonprofit organization whose mission is to build political power among Latinos and other minority groups by increasing their participation in the U.S. democratic process. To achieve that mission, SVREP conducts the following programs: get-out-the-vote; voter registration; voter turnout; and other programs designed to educate voters. Since it was founded in 1974, SVREP has registered over 2.7 million voters. SVREP conducts its voter registration activities at community-based sites such as school campuses, malls, and fairs. SVREP

registered voters and conducted get-out-the-vote activities in Bexar, Dallas, Tarrant, and Harris counties in 2018.

27. Defendant's actions have injured Plaintiff SVREP by calling into question the voter registration of naturalized citizens in Texas and discouraging naturalized individuals from registering to vote and voting, thus draining SVREP's resources and impairing SVREP's ability to carry out its mission.

28. Plaintiff Mi Familia Vota Education Fund ("MFV") is a national nonprofit organization whose mission is to expand the Latino electorate and increase justice for Latinos through increased civic participation. MFV is headquartered in Phoenix, Arizona, and serves individuals in Texas.  To promote civic engagement in the communities it serves, MFV conducts citizenship assistance, voter registration, voter education, and get-out-the-vote activities throughout Texas, including in the Dallas, Houston, and San Antonio metropolitan areas.  In the Houston area alone, MFV hosted 89 different voter registration events in 2018, and helped register voters at naturalization ceremonies.  MFV registered approximately 3,400 people to vote in Texas in 2018.

29. Defendant's actions have injured Plaintiff Mi Familia Vota Education Fund by calling into question the voter registration of naturalized citizens in Texas and discouraging naturalized individuals from registering to vote and voting, thus draining Mi Familia Vota Education Fund's resources and impairing Mi Familia Vota Education Fund's ability to carry out its mission.

30. Plaintiff La Unión Del Pueblo Entero (LUPE) is a nonprofit membership organization founded on the belief that members of the low-income community have the responsibility and the obligation to organize themselves.  LUPE's mission is to build strong, healthy

communities in the Texas Rio Grande Valley through community organizing and civic engagement. To promote civic engagement in the communities it serves, LUPE conducts voter registration, voter education, and non-partisan get-out-the-vote campaigns, as well as assists individuals to prepare their naturalization applications.  LUPE is headquartered in San Juan, Texas, and its members primarily reside in Hidalgo, Cameron, Willacy, and Starr Counties, Texas. LUPE has over 8,000 members, including Latino naturalized U.S. citizens who are registered to vote.  LUPE registers voters year-round, including at its monthly membership meetings, at house meetings, in all of the LUPE offices and especially at the three area naturalization ceremonies where new citizens take their oath.

31. Plaintiff LUPE has members that meet the description of individuals whose personal information appears on the list of persons identified as non-U.S. citizens provided by Defendant Whitley to counties as actionable information for investigation and removal from the voter rolls. Plaintiff LUPE's affected members are injured by having been placed on the Secretary of State's list of "Possible Non U.S. Citizens" and having their identifying information sent to the counties in which they are registered to vote with instructions to use that information for investigation and possible removal from the voter rolls. Plaintiff LUPE's affected members are further injured by having been stigmatized as persons who might have registered to vote illegally.

32. Defendant's actions have also injured Plaintiff LUPE by calling into question the voter registration of naturalized citizens in Texas and discouraging naturalized individuals from registering to vote and voting, thus draining LUPE's resources and impairing LUPE's ability to carry out its mission.

**Defendants**

33. Defendant David Whitley is the Texas Secretary of State.  The Secretary of State is one of six state officials who form the Executive Department of Texas. Defendant Whitley is appointed by the Governor, with confirmation by the Senate, and serves at the pleasure of the Governor. Defendant Whitley serves as Chief Election Officer for Texas, assisting county election officials and ensuring the uniform application and interpretation of election laws throughout Texas.   Defendant Whitley provides information and instruction to counties on how to administer voter registration and maintain the voter rolls, including when and how to investigate and remove registered voters from the rolls because of suspected non-U.S. citizenship.   Defendant Whitley has the ability to refer elections complaints to the Office of the Attorney General for investigation and prosecution. At all times relevant herein, Defendant Whitley acted under color of state law.   Defendant Whitley is sued in his official capacity.

34. Defendant Ken Paxton is the Texas Attorney General.  The Office of the Attorney General has statewide investigation authority and concurrent prosecution authority with local elected prosecutors over the election laws of the State.   In his capacity as Attorney General, Defendant Paxton and his office investigate and prosecute violations of the Texas Election Code, including illegal voting.   At all times relevant herein, Defendant Paxton acted under color of state law. Defendant Paxton is sued in his official capacity.

35. Defendant Greg Abbott is the Governor of Texas.  In that capacity, he appoints and directs the activities of the Texas Secretary of State.  Defendant Abbott is the chief executive and chief law enforcement officer of Texas.  At all times relevant herein, Defendant Abbott acted under color of state law. Defendant Abbott is sued in his official capacity.

36. Defendant Cheryl E. Johnson is the Galveston County Tax Assessor-Collector.  In that capacity, Defendant Johnson serves as the voter registrar for and maintains the voter rolls of Galveston County.  Defendant Johnson also provides the poll books for elections in Galveston County and provides programs on voter registration, voter participation and citizenship.  At all times relevant herein, Defendant Johnson acted under color of state law. Defendant Johnson is sued in her official capacity.

## FACTUAL BACKGROUND

Driver's Licenses in Texas

37. Non-U.S. citizens who are authorized to live in the United States are eligible for Texas driver's licenses and identification cards.  To obtain a driver's license (or state identification card) in Texas, a non-U.S. citizen must go to the Texas Department of Public Safety (DPS), complete an application, and must present to DPS "documentation issued by the appropriate United States agency that authorizes the applicant to be in the United States before the applicant may be issued a driver's license."[1]

38. Texas requires all non-U.S. citizens who apply for a driver's license to show a permanent resident immigrant card (also known as a "green card") or other document issued by the federal government showing that they are authorized to live in the United States.[2]

39. In addition, Texas only allows non-U.S. citizens to demonstrate their identity through presentation of an "unexpired document issued by the United States Citizenship and Immigration Services or successor federal immigration agency" or a visa issued by the U.S.

---

[1]  *See* Tex. Transp. Code Ann. § 521.142(a); *see also* 37 Tex. Admin. Code § 15.46 ("applicant for an original, renewal, or duplicate of a Texas driver license or personal identification certificate must provide information relating to their United States citizenship and provide their county of residence at the time of application.").
[2] *Id.*

12

State Department.[3]   DPS retains information showing a non-U.S. citizen's authorized presence in the U.S. in that individual's driver's license record.[4]

40. Adult lawful permanent resident immigrants receive standard Texas driver's licenses that are valid for six years.[5]   All original licenses that are not provisional licenses, learner licenses, or occupational driver's licenses issued to a "legal permanent resident of the United States or a refugee or asylee lawfully admitted into the United States expires[...]on the first birthday of the license holder occurring after the sixth anniversary of the date of the application."[6]

41. Non-U.S. citizens with long-term visas authorizing them to live and work in the U.S. also receive long term driver's licenses.[7]   Certain other non-U.S. citizens receive driver's licenses of shorter duration but these licenses can be renewed by showing a new document that authorizes continued presence in the U.S.[8]

42. Lawful permanent resident immigrants very commonly naturalize and register to vote. There is no requirement for naturalized U.S. citizens to present proof of citizenship to DPS upon naturalization or prior to the expiration of their driver's licenses.   A Texas driver's license holder is only required to notify DPS if the person changes address or seeks protection of personal information.[9]

43. Citizenship information is not updated by DPS until after the driver's license holder brings the agency proof of U.S. citizenship; this can be years after the individual is naturalized and

---

[3] 37 Tex. Admin. Code § 15.24(1).
[4] *See* Tex. Transp. Code Ann. § 521.041(a); *see also* 37 Tex. Admin. Code § 15.101 (DPS "is required by law to maintain records on licensed drivers.").
[5] *See* Tex. Transp. Code Ann. § 521.271.
[6] Tex. Transp. Code Ann. § 521.271(a)(1).
[7] Tex. Transp. Code Ann. § 521.271(a-2)-(a-4).
[8] *See* Tex. Transp. Code Ann. § 521.1425(c)(2).
[9] *See* Tex. Transp. Code Ann. § 521.054 (West)(a)-(b).

registered to vote.  Even if DPS updates its records to reflect the new U.S. citizenship of a driver's license holder, DPS retains the information that the individual originally secured the driver's license as a non-U.S. citizen.

Naturalizations in Texas

44. Lawful permanent resident immigrants typically become eligible for naturalization in five years.  The waiting period is four years for asylees who have permanent resident status and three years for spouses of U.S. citizens.   Thus a typical permanent resident immigrant in Texas who obtains a six-year driver's license will be eligible to become a U.S. citizen before that driver's license expires.  It may be several years between the time a new U.S. citizen registers to vote and the time she goes to DPS to renew her driver's license and provide updated citizenship information.

45. According to the U.S. Department of Homeland Security, for fiscal year 2012 through fiscal year 2017, less than the time period of a standard driver's license, over 340,000 individuals naturalized in Texas.  An average of 58,092 individuals naturalized in Texas in each of those years.

46. The U.S. Department of Homeland Security also reported, for fiscal year 2012 through fiscal year 2017, that 47% of the immigrants naturalized in Texas were originally from the Latin American countries of Mexico, El Salvador, Guatemala, Honduras, Colombia, Cuba, Peru, and Venezuela. An additional 25% of the immigrants naturalized in Texas were from the Asian countries of China, South Korea, India, the Philippines, Bangladesh, Burma,, Iran, Iraq, Nepal, Pakistan and Vietnam.

47. According to data from the United States Census Bureau, among Texas naturalized U.S. citizens, 51.7% are Latino and 28.8% are Asian.  Only 11.6% of Texas naturalized citizens are non-Latino White.[10]

48. Both local election officials and non-profit organizations offer voter registration assistance to newly naturalized citizens outside of naturalization ceremonies.  For example, the Harris County Voter Registrar routinely sends staff members to naturalization ceremonies in the Houston area to register new voters.  In addition, naturalized voters in Texas may register to vote at the Texas Department of Public Safety, by mail, at the voter registrar's office and at community events where voter registration is offered.

Latino Political Participation in Texas

49. In 2017, the Latino citizen voting age population of Texas was approximately 30%.

50. Among Texas Latinos who are eligible to vote (adult U.S. citizens), 17% are naturalized U.S. citizens.

51. In the 2018 midterm election, Texas Latino voters more than doubled their turnout when compared to the 2014 midterm elections. According to the Texas Legislative Council and Texas Secretary of State, in the 2014 midterm elections, 682,741 Latinos cast votes.  In the 2018 midterm elections, 1,604,589 Latinos cast votes.

52. Compared with 2014, Texas Latinos increased their vote share in the 2018 midterm election by about 5%.   According to the Texas Legislative Council and Texas Secretary of State, in 2014, Latinos cast 14.4% of all votes cast.  In 2018, Latinos cast 19.1% of all votes cast.

---

[10] American Community Survey FactFinder, *Selected Characteristics of the Native and Foreign-Born Populations (Texas)*, United States Census Bureau (2017 5-year ACS data), available at https://factfinder.census.gov/faces/tableservices/jsf/pages/productview.xhtml?src=CF (accessed January 31, 2019).

The Secretary of State's List of "Possible Non U.S. Citizens"

53. On January 25, 2019, Defendant Whitley's Director of Elections Keith Ingram released Election Advisory No. 2019-02 ("the Advisory") to all voter registrars in Texas. The Advisory stated that the office of the Secretary of State, beginning the following day, would provide to Texas counties information about "individuals who provided documentation to DPS showing that the person is not a citizen of the United States during the process of obtaining or acquiring a Texas Driver License or Personal Identification Card from DPS."[11]

54. The Advisory stated that the office of the Secretary of State had worked with DPS since March 2018 to "produce actionable information voter registrars" could use for voter list maintenance.[12] While doing so, the Secretary of State claimed in the Advisory that his office "sought to create the strongest matching criteria that produces the least possible impact on eligible Texas voters while fulfilling the responsibility to manage the voter rolls," in accordance with Section 18.0681 of the Texas Election Code.[13]

55. The Advisory stated that Defendant Whitley's office limited the DPS data that it was going to produce to counties "to individuals who provided valid documents indicating the person is not a citizen of the United States *at the time* the person obtained a Driver License or Personal Identification Card." (emphasis added).[14]

---

[11]  Election Advisory No. 2019-02, Texas Secretary of State (January 25, 2019), available at https://www.sos.state.tx.us/elections/laws/advisory2019-02.shtml (accessed January 30, 2019).
[12]  Election Advisory No. 2019-02, Texas Secretary of State (January 25, 2019), available at https://www.sos.state.tx.us/elections/laws/advisory2019-02.shtml (accessed January 30, 2019).
[13]  *Id.* The Election Code Section cited by the Advisory deals with "matching criteria" for potentially duplicate voter records, or voters who may "have more than one voter registration record on file." Tex. Elec. Code Ann. § 18.0681(a).
[14] Election Advisory No. 2019-02, Texas Secretary of State (January 25, 2019), available at https://www.sos.state.tx.us/elections/laws/advisory2019-02.shtml (accessed January 30, 2019).

56. The Advisory stated: "Our office has obtained the preliminary data file for all current (unexpired) Driver License and Personal Identification cards that meet this criteria, and we will run that set of information tomorrow evening."[15]

57. The Advisory anticipated that counties would be met with requests from the public for the lists of non-U.S. citizens but urged counties to contact their "local prosecutor and the attorney general, who have jurisdiction over such matters" if the counties received such requests.[16]

58. The Advisory claimed that the criteria used to match registered voters to driver's license records are "some of the strongest possible matching criteria used" by the Secretary of State and advised that "the county may choose to investigate the voter, pursuant to Section 16.033, Election Code." The Advisory also explained that if the list being sent by the office of the Secretary of State "provides the registrar with reason to believe the person is no longer eligible for registration . . . the registrar should send a Notice of Examination for Citizenship (Proof of Citizenship) (PDF) Letter."[17]

59. The Advisory provided county registrars with instructions to send voters a form letter stating:   "Your registration status is being investigated because there is reason to believe you may not be a United States citizen. . . You are now required to confirm your eligibility for registration by providing proof of citizenship to maintain your registration status. . . If

---

[15] Election Advisory No. 2019-02, Texas Secretary of State (January 25, 2019), available at https://www.sos.state.tx.us/elections/laws/advisory2019-02.shtml (accessed January 30, 2019).
[16] Election Advisory No. 2019-02, Texas Secretary of State (January 25, 2019), available at https://www.sos.state.tx.us/elections/laws/advisory2019-02.shtml (accessed January 30, 2019).
[17]   Election Advisory No. 2019-02, Texas Secretary of State (January 25, 2019), available at https://www.sos.state.tx.us/elections/laws/advisory2019-02.shtml (accessed January 30, 2019); *see also* "Notice to Registered Voter for Proof of Citizenship," Texas Secretary of State, available at https://www.sos.state.tx.us/elections/forms/bw1-12.pdf (accessed January 31, 2019).

you fail to provide this proof of citizenship within 30 days from the date of this letter, your voter registration will be cancelled."[18]

60. Upon publishing its Advisory, the Texas Secretary of State's office also published a news release on January 25, 2019 announcing that Defendant Whitley "issued an advisory to county voter registrars regarding voter registration list maintenance activities, which include identifying any non-U.S. citizens registered to vote in the State of Texas."[19]

61. Defendant Whitley claimed that his office had "discovered that a total of approximately 95,000 individuals identified by DPS as non-U.S. citizens have a matching voter registration record in Texas, approximately 58,000 of whom have voted in one or more Texas elections."  The news release further emphasized that "[v]oting in an election in which the person knows he or she is not eligible to vote is a second-degree felony in the State of Texas" and declared that the office of the Secretary of State had "immediately provided the data in its possession to the Texas Attorney General's office, as the Secretary of State has no statutory enforcement authority to investigate or prosecute alleged illegal activity in connection with an election."[20]

62. Defendant Whitley's news release also stated that his office provided the information about potential non-U.S. citizen to counties "so that the county voter registrar can take action."[21]  The news release declared that "[i]f a registered voter is identified as a non-U.S. citizen, he

---

[18] Election Advisory No. 2019-02, Texas Secretary of State (January 25, 2019), available at https://www.sos.state.tx.us/elections/laws/advisory2019-02.shtml (accessed January 30, 2019); *see also* "Notice to Registered Voter for Proof of Citizenship," Texas Secretary of State, available at https://www.sos.state.tx.us/elections/forms/bw1-12.pdf (accessed January 31, 2019).

[19] *Secretary Whitley Issues Advisory On Voter Registration List Maintenance Activity*, Texas Secretary of State (January 25, 2019), available at https://www.sos.state.tx.us/elections/laws/advisory2019-02.shtml (accessed January 30, 2019).

[20] *Id.*

[21] *Secretary Whitley Issues Advisory On Voter Registration List Maintenance Activity*, Texas Secretary of State (January 25, 2019), available at https://www.sos.state.tx.us/elections/laws/advisory2019-02.shtml (accessed January 30, 2019).

or she *should* receive a Notice of Examination (PDF) from the county voter registrar indicating that his or her registration status is being examined on the grounds that he or she is not a U.S. citizen." (emphasis added).[22]

63. On the same day that Defendant Whitley issued his Advisory and news release, Defendant Attorney General Paxton issued a press release declaring "Texas Secretary of State's Office Discovers Nearly 95,000 People Identified by DPS as Non-U.S. Citizens are Registered to Vote in Texas." The news release referenced the Secretary of State's press release and stated that every "instance of illegal voting threatens democracy in our state and deprives individual Texans of their voice." Defendant Paxton further stated "My Election Fraud Unit stands ready to investigate and prosecute crimes against the democratic process when needed."[23]

64. Also on January 25, 2019, Defendant Paxton tweeted: "VOTER FRAUD ALERT: The @TXsecofstate discovered approx 95,000 individuals identified by DPS as non-U.S. citizens have matching voter registration record in TX, approx 58,000 of whom have voted in TX elections. Any illegal vote deprives Americans of their voice."[24]

65. Defendant Governor Abbott also tweeted on January 25, 2019: "Thanks to Attorney General Paxton and the Secretary of State for uncovering and investigating this illegal vote

---

[22] *Id*

[23] *AG Paxton: Texas Secretary of State's Office Discovers Nearly 95,000 People Identified by DPS as Non-U.S. Citizens are Registered to Vote in Texas*, Ken Paxton, Attorney General of Texas (January 25, 2019), available at https://www.texasattorneygeneral.gov/news/releases/ag-paxton-texas-secretary-states-office-discovers-nearly-95000-people-identified-dps-non-us-citizens (accessed 31 Jan. 2019).

[24] Ken Paxton (@KenPaxtonTX), Twitter (January 25, 2019, 12:37 PM), https://twitter.com/KenPaxtonTX/status/1088898595653386240.

[sic] registration. I support prosecution where appropriate. The State will work on legislation to safeguard against these illegal practices. #txlege #tcot"[25]

66. On January 27, 2019, two days after Defendant Whitley's office published its press release and Advisory, President Donald J. Trump announced on Twitter: "58,000 non-citizens voted in Texas, with 95,000 non-citizens registered to vote. These numbers are just the tip of the iceberg. All over the country, especially in California, voter fraud is rampant. Must be stopped. Strong voter ID!"[26]

67. The Secretary of State's announcement, and subsequent public statements by the Texas Attorney General and Governor, quickly snowballed into news reports declaring that state officials had discovered thousands of non-U.S. citizens on the state's voter rolls.

68. On January 25, 2019, local news station WFAA in Dallas reported, that "[a]bout 95,000 non-citizens are registered to vote in Texas, and more than half of those have cast ballots in at least one election, Texas Secretary of State David Whitley announced on Friday."   The outlet also reported that "[o]f he 95,000 non-citizens registered, 58,000 have voted in one or more elections since 1996."

69. On January 26, 2019, Fox News reported that "Texas Attorney General Ken Paxton announced Friday that the state has discovered 95,000 non-citizens on the voter rolls going back to 1996, 58,000 of whom have voted in at least one Texas election."

---

[25] Greg Abbott (@GregAbbott_TX), Twitter, (January 25, 2019, 1:57 PM)
https://twitter.com/GregAbbott_TX/status/1088918898643271680.
[26] President Donald J. Trump (@realDonaldTrump), Twitter (January 27, 2019, 5:22 AM)
https://twitter.com/realDonaldTrump/status/1089513936435716096.

70. On January 31, 2019, a local television station in Laredo, Texas reported that "[t]he Webb County Elections Administration has received notice that there are over one-thousand non-citizen voters in the county."[27]

71. On January 25, 2019, Breitbart News headlined "95K Noncitizens Registered to Vote in Texas, Say State Officials," and stated that according to the Attorney General of Texas, the Secretary of State had "discovered troubling figures — roughly 95,000 individuals identified as non-U.S. citizens by the Texas Department of Public Safety (DPS) are registered to vote and, 58,000 of those, 61 percent, voted at least once."

The Secretary of State's Office Soon Advised Counties that its List is Flawed

72. The purpose of Defendant's list of "Possible Non U.S. Citizens," and the accompanying instructions to county voter registrars in Election Advisory No. 2019-02, is to create a program to systematically remove the names of individuals from the official list of eligible voters.

73. On January 28, 2019, the Monday following Defendant's issuance of the Election Advisory and list of suspected non-U.S. citizen voters, Defendant Cheryl Johnson, the Galveston County tax assessor-collector, said she would immediately send out letters to the individuals on her list. Ms. Johnson claimed she was following state law by starting to send letters to the more than 830 people in Galveston County that the Secretary of State had flagged.[28] Defendant Johnson proceeded to send letters to voters on the suspected non-U.S. citizen voter list that day.[29]

---

[27] *Non-citizen voter registration in Texas*, KGNS-TV (January 31, 2019) https://www.kgns.tv/content/news/Non-citizen-voter-registration-in-Texas-505173711.html (accessed February 1, 2019).
[28] Alexa Ura, *Some Texas voters already are being asked to prove their citizenship after state's announcement*, The Texas Tribune (January 28, 2019), available at

74. The following day, Tuesday January 29, 2019, the Secretary of State's office began to call county voter registration officials to advise them that the information on the list of suspected non-U.S. citizen voters "may be flawed."[30]   The Secretary of State's office further advised the counties "that some on the lists shouldn't be there because they had already proven their citizenship when they registered to vote at naturalization ceremonies or at a Texas Department of Public Safety office."[31]

75. Cameron County Elections Administrator Remi Garza commented publicly that the Secretary of State's office gave Mr. Garza's office information on January 29 "that suggested the numbers they were originally provided 'may have been overstated' and that 'individuals that had already provided proof of citizenship to the DPS office had been included in the original list provided to the county.'"[32]

---

https://www.texastribune.org/2019/01/28/some-texas-voters-are-already-being-asked-prove-their-citizenship-foll/ (accessed February 1, 2019).

[29] *Id.*

[30] James Barragán, Julieta Chiquillo, and Robert T. Garret, *Some names in list of 98,000 potential non-citizen voters included 'in error,' county officials say, citing state*,  Dallas News powered by the Dallas-Morning News (January 29, 2019), available at https://www.dallasnews.com/news/elections/2019/01/29/list-98000-potential-non-citizen-voters-may-overstated-texas-secretary-state-tells-counties (accessed January 30, 2019); *see also* Alexa Ura, *Texas quietly informs counties that some of the 95,000 voters flagged for citizenship review don't belong on the list*, The Texas Tribune (January 29, 2019), available at https://www.texastribune.org/2019/01/29/texas-voter-citizenship-list-problems-state-tells-counties/ (accessed January 30, 2019).

[31] *See* Guillermo Contreras and Dylan McGuinness, *State hedges on claim that 100,000 Texas voters aren't citizens, faces federal lawsuit*, San Antonio Express-News (January 29, 2019), available at https://www.expressnews.com/news/local/article/LULAC-sues-Texas-over-witch-hunt-move-to-13570848.php?utm_source=newsletter&utm_medium=email&utm_campaign=MySA_Daily_eEdition (accessed January 30, 2019).

[32] James Barragán, Julieta Chiquillo, and Robert T. Garret, *Some names in list of 98,000 potential non-citizen voters included 'in error,' county officials say, citing state*,  Dallas News powered by the Dallas-Morning News (January 29, 2019), available at https://www.dallasnews.com/news/elections/2019/01/29/list-98000-potential-non-citizen-voters-may-overstated-texas-secretary-state-tells-counties (accessed January 30, 2019)

76. The Secretary of State's office advised Cameron County on January 29 that "1,590 people[...]were wrongly on the list," then later called Mr. Garza's office to say that "the 1,590 figure was incorrect," but gave no further information.[33]

77. Also on Tuesday January 29, the Secretary of State's office contacted McLennan County's Election Administrator Kathy Van Wolfe to tell Ms. Van Wolfe "to disregard the list."[34] Ms. Van Wolfe stated publicly that Defendant's office told her that "[a]ll those people have proven citizenship."[35]   By the afternoon of January 29, Hidalgo County elections administrator Yvonne Ramón announced that she had "determined there were 100 duplicates" on the list sent to her by the Secretary of State's office.[36]

78. Also on Tuesday January 29, the Travis County tax assessor-collector, Bruce Elfant, stated publicly that his office was trying to organize a "jumble" of information it received on 4,500 voters into a usable format.   Mr. Elfant further stated "I said to the secretary of state's office this morning, 'It would have been nice if you sent it in a spreadsheet,' [and] they told me, 'Well, we didn't.' A lot of things would have been nice, I guess."[37]

---

[33] Guillermo Contreras and Dylan McGuinness, *State hedges on claim that 100,000 Texas voters aren't citizens, faces federal lawsuit*, San Antonio Express-News (January 29, 2019), available at https://www.expressnews.com/news/local/article/LULAC-sues-Texas-over-witch-hunt-move-to-13570848.php?utm_source=newsletter&utm_medium=email&utm_campaign=MySA_Daily_eEdition (accessed January 30, 2019).

[34] Cassie L. Smith, *State: All 366 on local list of potential noncitizen voters are citizens,* Waco Tribune-Herald (January 31, 2019), available at https://www.wacotrib.com/news/elections/state-all-on-local-list-of-potential-noncitizen-voters-are/article_20771942-538d-506d-bcad-7e7ca79e261d.html?platform=hootsuite (accessed January 31, 2019).

[35] *Id*.

[36] Guillermo Contreras and Dylan McGuinness, *State hedges on claim that 100,000 Texas voters aren't citizens, faces federal lawsuit*, San Antonio Express-News (January 29, 2019), available at https://www.expressnews.com/news/local/article/LULAC-sues-Texas-over-witch-hunt-move-to-13570848.php?utm_source=newsletter&utm_medium=email&utm_campaign=MySA_Daily_eEdition (accessed January 30, 2019).

[37] Liam Stack, *Many Texas Voters Whose Citizenship Was Questioned Are in Fact Citizens*, New York Times (January 29, 2019), available at  https://www.nytimes.com/2019/01/29/us/texas-voter-citizenship-list.html (accessed January 30, 2019).

79. That same day, the Dallas County Elections Administrator Toni Pippins-Poole stated publicly: "We received a call from the state saying we should put things on hold . . . Some of the data that they received was flawed. Some of the voters had already provided proof of citizenship."[38]

80. By Wednesday, January 30, 2019, Harris County had reported that 18,000 individuals on the Secretary of State's list of suspected non-U.S. citizen registrants had already been identified as citizens and that Harris County expected more mistakes to be discovered.[39]

81. That same day, the McLennan County Elections Administrator announced that all 366 registered voters that the Secretary of State targeted for investigation in that county are U.S. citizens.[40]

82. The Williamson County Election Administrator, who is also president of the Association of Texas Elections Administrators, announced that more than half of the 2,033 voters on his county's list were being removed after the Secretary of State's revision.[41]

83. The Secretary of State's office advised counties that its list of suspected non-U.S. citizen registrants wrongly included U.S. citizens who had registered to vote after taking the oath

---

[38] Paul Weber, *Texas tells counties noncitizen voter report may be flawed*, Associated Press (January 29, 2019), available at https://www.apnews.com/e959bf0789a94456918a93d43542505b (accessed February 1, 2019).

[39] Associated Press, *18K Houston area voters removed from citizenship check,* The Tribune (January 30, 2019) available at http://www.tribtown.com/2019/01/30/us-texas-voter-rolls-4/ (accessed January 31, 2019).

[40] Cassie L. Smith, *State: All 366 on local list of potential noncitizen voters are citizens*, Waco Tribune-Herald, (January 30, 2019) available at https://www.wacotrib.com/news/elections/state-all-on-local-list-of-potential-noncitizen-voters-are/article_20771942-538d-506d-bcad-7e7ca79e261d.html (accessed February 1, 2019).

[41] James Barragán, Robert T. Garrett, and Julieta Chiquillo, *Tens of thousands removed from potential non-citizen voters list after counties find flawed data*, Dallas Morning News (January 31, 2019), available at https://www.dallasnews.com/news/texas-politics/2019/01/30/tens-thousands-removed-potential-non-citizen-voters-list-after-counties-find-flawed-data (accessed February 1, 2019).

of citizenship at naturalization ceremonies and who registered to vote at a visit to a DPS office after naturalization.[42]

84. As of this date, many if not all of the eligible voters erroneously identified as non-U.S. citizens by the Secretary of State are naturalized U.S. citizens.

<u>The Matching Procedure Employed by Defendant has and will Continue to Target Naturalized Citizens for Investigation and Removal from the Voter Rolls</u>

85. The matching procedure used by Defendant Whitley to create his list of "Possible Non U.S. Citizens" relies on outdated and inaccurate records from DPS; the resulting list has erroneously identified numerous registered voters in Texas who are U.S. citizens who are properly registered to vote and who could be deprived of their right to vote in Defendants' purge effort.

86. In preparing his list of "Possible Non U.S. Citizens," Defendant Whitley performed the matching procedure on driver's license records dating back to at least 1996.[43]  Thus, his list of suspected non-U.S. citizen voters includes immigrants who showed proof of authorized presence in the U.S. during the process of obtaining a driver's license decades ago. Thousands of naturalized citizens who registered to vote are included on the Secretary of State's list of suspected non-U.S. citizen voters.

87. The errors in Defendant's matching procedure are systematic, predictable, and specific to foreign-born U.S. citizens.

---

[42] *See* fn. 33, *supra*, and Phil Prazan, *County officials: Texas non-citizen voter list is 'too big,' wrong*, KXAN, (January 30, 2019) available at https://www.kxan.com/news/local/austin/county-officials-texas-non-citizen-voter-list-is-too-big-wrong/1737151727 (accessed February 1, 2019).

[43] Gregg Re, *List of 95K ineligible voters on the rolls may be overstated, Texas State Department suggests*, FOX News (January 30, 2019) available at https://www.foxnews.com/politics/texas-state-officials-suggest-report-of-95k-ineligible-voters-may-have-been-dramatically-overstated (accessed February 1, 2019).

88. The matching procedure employed by Defendant Whitley will continue to identify naturalized U.S. citizens as suspected non-U.S. citizens registered as voters.  Defendant Whitley's press release stated:

> Going forward, the Texas Secretary of State's office will use information it obtains from DPS on a monthly basis to cross-reference with Texas' statewide voter registration database and match potential non-U.S. citizens who have registered to vote. Once a voter registration is identified as a match, the Texas Secretary of State's office will notify the county in which the person is registered so that the county voter registrar can take action.[44]

89. Thus Defendant Whitley's matching procedure will flag, on a monthly basis, any new registrants whose past driver's license records show they were not U.S. citizens and send those registrants' names to the counties for investigation and possible removal from the voter rolls.  The matching procedure will flag, routinely and predictably, every newly naturalized citizen who registers to vote and who already has a Texas driver's license.[45]

<u>Defendant will not Rescind the Advisory, Withdraw the Suspect Voter List, or Provide Written Guidance to Counties Regarding the Flaws in the Suspect Voter List</u>

90. On January 31, 2019, former Texas Secretary of State Carlos Cascos, who was appointed by and served two years under Governor Greg Abbott, commented publicly on list of suspected non-U.S. voters: "I think they need to rescind it, do due diligence and make a more accurate list."  He further recommended that the Secretary of State "contact everyone and admit to it and say, 'We made an honest mistake,' and recompile the list."[46]

---

[44] *Secretary Whitley Issues Advisory On Voter Registration List Maintenance Activity*, Texas Secretary of State (January 25, 2019), available at https://www.sos.state.tx.us/elections/laws/advisory2019-02.shtml (accessed January 30, 2019).

[45] Election Advisory No. 2019-02, Texas Secretary of State (January 25, 2019), available at https://www.sos.state.tx.us/elections/laws/advisory2019-02.shtml (accessed January 30, 2019).

[46] Carlos Sanchez, *Former Texas Secretary of State Believes Inaccurate Voting List Should Be Rescinded*, Texas Monthly (January 31, 2019), available at https://www.texasmonthly.com/politics/former-texas-secretary-of-state-believes-inaccurate-voting-list-should-be-rescinded/ (accessed January 31, 2019).

91. Mr. Cascos also stated that he never went through the type of exercise that led to Defendant Whitley's list of suspected non-U.S. citizen voters: "To my knowledge, that did not occur while I was in office [and] I never saw such a correlation [between DPS and voter role databases]. That discussion never took place."[47]

92. By contrast, when asked whether he thought the investigation process should stop after local officials found serious issues with the list, Defendant Abbott responded "Listen, this isn't a hard and fast list"[48] and further stated: "This is what we would categorize as a process, a work in process . . . They will get it right."[49]

93. Williamson County Elections Administrator Chris Davis, stated publicly in an email on Tuesday January 29, 2019, that "Williamson County has also received NO written instructions after yesterday morning's call from the" Secretary's office.[50]

94. On February 1, 2019, the Secretary of State's office emailed the counties once again, suggesting additional methods to investigate the citizenship of individuals on its list of suspected non-U.S. citizens, including contacting federal immigration authorities.[51] The Secretary of State's email to the counties neither admitted that its list of suspected non-U.S.

---

[47] Carlos Sanchez, *Former Texas Secretary of State Believes Inaccurate Voting List Should Be Rescinded*, Texas Monthly (January 31, 2019), available at https://www.texasmonthly.com/politics/former-texas-secretary-of-state-believes-inaccurate-voting-list-should-be-rescinded/ (accessed January 31, 2019).

[48] *Id.*

[49] Ashley Lopez, *Gov. Greg Abbott Says Alleged Noncitizen Voter Purge Is A 'Work In Process,'* KUT (January 31, 2019), available at http://www.kut.org/post/gov-greg-abbott-says-alleged-noncitizen-voter-purge-work-process (accessed January 31, 2019).

[50] James Barragan, *Tens of Thousands removed from potential non-citizen voters list after counties find flawed data,* Dallas News (January 31, 2019), available at https://www.dallasnews.com/news/texas-politics/2019/01/30/tens-thousands-removed-potential-non-citizen-voters-list-after-counties-find-flawed-data (accessed February 1, 2019).

[51] James Barragán and Julieta Chiquillo, *Texas issues new guidelines for counties to probe whether noncitizens voted*, Dallas Morning News (February 1, 2019), available at https://www.dallasnews.com/news/texas-politics/2019/02/01/texas-officials-issue-new-guidelines-investigation-whether-non-citizens-voted (accessed February 1, 2019).

citizens was flawed nor suggested that counties refrain from investigating the names on the list until state officials could correct the list.

95. As of the filing of this complaint, Defendant Whitley has not:  rescinded his list of suspected non-U.S. citizens; rescinded his Election Advisory; or made any public statement acknowledging that his list of suspected non-U.S. citizen voters is flawed and wrongly identified thousands of naturalized U.S. citizens.

Other States' use of Driver's License Records to Identify Non-U.S. Citizens on Their Voter Rolls was Thoroughly Discredited Years ago

96. Similar attempts by other states to identify non-U.S. citizen voters from motor vehicles records have been widely discredited, leading to an embarrassing withdrawal of claims by state elections officials in Florida and Colorado.

97. In May 2012 the Florida Department of State launched a voter purge effort that originally identified 180,000 registered voters as potential non-U.S. citizens based on their driver's license records. The Florida Department of State sent letters demanding proof of citizenship to 2,600 registered voters, a disproportionately high number of which were Latino.[52]

98. By September 2012, the Florida purge, which had faltered when county elections officials questioned the methodology, started up again, this time with a much smaller list of 198 registered voters.[53]  Ultimately, about 85 voters were removed from the rolls.[54]

---

[52] Greg Allen, *World War II Vet Caught Up In Florida's Voter Purge Controversy*, NPR (May 31, 2012) available at https://www.npr.org/sections/itsallpolitics/2012/05/31/154020289/world-war-ii-vet-caught-up-in-floridas-voter-purge-controversy   (accessed February 1, 2019); *see also* Janell Ross, *Florida Voter Purge Will Continue, Defying Federal Warning*, Huffington Post (June 2, 2012) available at https://www.huffingtonpost.com/2012/06/02/florida-voter-purge-federal-warning_n_1564131.html (accessed February 1, 2019).
[53] Steve Bousquet, Fla. Gov. Rick Scott's voter purge efforts start anew, Tampa Bay Times (September 27, 2012) available at http://www.tampabay.com/news/politics/national/fla-gov-rick-scotts-voter-purge-efforts-start-anew/1253538 (accessed February 1, 2019)

99. In Colorado, the Secretary of State launched a similarly flawed voter purge of alleged non-U.S. citizens in 2012 that also dwindled to very small numbers. After claiming, based on driver's license records, that there were up to 11,000 non-U.S. citizens on the Colorado voter rolls, and then sending almost 4,000 letters accusing individual registered voters of non-U.S. citizenship, Colorado Secretary of State Scott Gessler admitted that he thought 141 voters were potentially non-U.S. citizens and that he could not confirm that any were non-U.S.-citizens before the General Election.[55]   Ultimately 14 of these voters were removed from the rolls; none had voted.[56]

Texas Voter Registration and Voter List Maintenance

100.  In Texas, a "qualified voter" is a person who:  is 18 years of age or older; is a United States citizen; has not been determined by a final judgment of a court to be mentally incapacitated without the right to vote; is not a felon who has not completed the sentence associated with the felony; is a resident of Texas; and is registered to vote.[57]

101.  A person seeking to register to vote in Texas must submit an application.  The voter registrant must complete the application, affirm that he or she is a U.S. citizen, and sign below the statement:   "I understand that giving false information to procure a voter

---

[54] Steve Bousquet and Amy Sherman, *Florida suspends non-citizen voter purge efforts*, (March 27, 2014), available at https://www.miamiherald.com/news/politics-government/article2087729.html (accessed February 1 2019).
[55] *Scott Gessler, Colorado's Secretary Of State, Asks 4,000 Registered Voters For Proof Of Citizenship*, Huffington Post (August 17, 2012), available at https://www.huffingtonpost.com/2012/08/17/scott-gessler-secretary-o_n_1796910.html (accessed February 1, 2019); Jordan Fabian, *Voter Purging Resurfaces in Colorado*, ABC News (October 24, 2019) available at https://abcnews.go.com/ABC_Univision/voter-purging-resurfaces-colorado/story?id=17552694 (accessed February 1, 2019).
[56] Sam Levin, *Out of fourteen illegal voters banned after Scott Gessler's campaign, how many voted? Zero* Westword (October 12, 2012) available at https://www.westword.com/news/out-of-fourteen-illegal-voters-banned-after-scott-gesslers-campaign-how-many-voted-zero-5868036  (accessed February 1, 2019).
[57] Tex. Elec. Code Ann. § 11.002(a); *see also* Tex. Elec. Code Ann. § 13.001(a).

registration is perjury, and a crime under state and federal law. Conviction of this crime may result in imprisonment up to 180 days, a fine up to $2,000, or both."[58]

102. In Texas counties, the "county tax assessor-collector is the voter registrar for the county unless the position of county elections administrator is created or the county clerk is designated as the voter registrar."[59]

103. The Texas Election Code authorizes the voter registrar to cancel a voter registration immediately upon notice that the voter has moved outside the county, registered to vote outside the county, died, been adjudicated mentally incompetent or been convicted of a felony.[60]

104. In addition to the grounds for immediate cancellation, the Texas Election Code authorizes a voter registrar who has reason to believe that a voter has become ineligible to send a notice to the voter indicating that the voter's registration status is under investigation by the registrar and the voter must provide proof of eligibility within 30 days.[61]

105. With respect to a voter's citizenship, the Texas Election Code only requires voter registrars to send a notice requiring proof of U.S. citizenship if the registrar has received information that the voter was excused or disqualified from jury service because of citizenship status.[62] The Texas Secretary of State provides quarterly reports to inform county registrars of any registered voters who have been excused or disqualified from jury service because the voter is not a U.S. citizen.[63]

---

[58] See Tex. Elec. Code Ann. § 13.002(a)-(c) and the Texas voter registration form, available at https://www.sos.state.tx.us/elections/forms/vr-with-receipt.pdf.
[59] See Tex. Elec. Code Ann. § 12.001.
[60] See Tex. Elec. Code § 16.031 (listing reasons for which registrars may immediately cancel registration).
[61] See Tex. Elec. Code § 16.033.
[62] See Tex. Elec. Code § 16.0332(a).
[63] See Tex. Elec. Code § 18.068.

## CAUSES OF ACTION

### COUNT 1

**(Violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution)**

106.  Plaintiffs incorporate by reference the allegations in all preceding paragraphs.

107.  Section 1 of the Fourteenth Amendment provides:  "All persons born or naturalized in the United States and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. . . . No State shall . . . deny to any person within its jurisdiction the equal protection of the laws."

108.  Defendants violate the Fourteenth Amendment because they deny to Plaintiffs, who are naturalized citizens of the United States, equal protection of the laws through Defendants' imposition of additional requirements to register to vote and to maintain voter registration that Defendants do not impose on native-born citizens.  Defendants have no compelling interest in imposing such burdens and the procedures used by Defendants are not narrowly tailored.

109.  Defendants' violation caused and will cause harm to Plaintiffs.

### COUNT 2

**(Violation of Sec. 2 of the Voting Rights Act, 52 U.S.C. § 10301)**

110.  Plaintiffs incorporate by reference the allegations in all preceding paragraphs.

111.  Section 2 of the Voting Rights Act, 52 U.S.C. § 10301, provides:  "No voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or

abridgement of the right of any citizen of the United States to vote on account of race or color, or [membership in a language minority group]."

112. Defendants violate Section 2 of the Voting Rights Act by imposing a voting qualification or prerequisite to voting or standard, practice, or procedure through the additional requirements Defendants impose on Plaintiffs and other Latino naturalized citizens prior to such persons exercising their right to vote.  Defendants' imposition of such additional requirements purposefully abridges and denies the right to vote of Plaintiffs, and the populations served by Plaintiff organizations, on account of their race, color or membership in a language minority group.

113. Defendants' requirements will disproportionately and negatively affect Latinos, including Plaintiffs, because the Latino population in Texas has a higher ratio of naturalized citizens to native-born citizens when compared to the non-Latino population.  Defendants' imposition of such additional requirements will result in denial and abridgment of the right to vote of Plaintiffs, and the populations served by Plaintiff organizations on account of their race, color or membership in a language minority group by making the political processes leading to nomination or election in Texas not equally open to participation by Latinos.

114. Defendants' violation caused and will cause harm to Plaintiffs.

## COUNT 3

### (Violation of Voting Rights Act, 52 U.S.C. § 10101)

115. Plaintiffs incorporate by reference the allegations in all preceding paragraphs.

116. The Voting Rights Act, 52 U.S.C. § 10101(a)(2), provides:  "(2) No person acting under color of law shall [] in determining whether any individual is qualified under State law or

laws to vote in any election, apply any standard, practice, or procedure different from the standards, practices, or procedures applied under such law or laws to other individuals within the same county, parish, or similar political subdivision who have been found by State officials to be qualified to vote."

117.  Defendants violate the Voting Rights Act, 52 U.S.C. § 10101 because, under color of law, they impose additional requirements and procedures to prove eligibility to vote upon Plaintiffs and the populations served by Plaintiff organizations that they do not impose on other individuals that have been found by state officials to be qualified to vote.  Defendants impose additional requirements and procedures to prove eligibility to vote because of Plaintiffs' race, color or national origin.

118.  Defendants' violation caused and will cause harm to Plaintiffs.

## COUNT 4

### (Violation of 42 U.S.C. § 1985, Conspiracy to interfere with civil rights)

119.  Plaintiffs incorporate by reference the allegations in all preceding paragraphs.

120.  42 U.S.C. § 1985(3) provides:   "If two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector[. . .] [I]n any case of conspiracy set forth in this section, if one or more persons

engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is . . . deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators."

121.  Defendants Abbott, Paxton, and Whitley violate § 1985(3)  because they conspired to deny, on the basis of race and national origin, Plaintiffs and the populations served by Plaintiff organizations the equal protection of the laws as detailed above in Count 1 and to deny Plaintiffs' rights under the federal Voting Rights Act.

122.  Defendants Abbott, Paxton, and Whitley additionally violated § 1985(3) because they conspired to prevent Plaintiffs and the populations served by Plaintiff organizations from exercising their right to vote in federal elections by intimidation and threats.  Such intimidation and threats included the Election Advisory, release of lists of suspect voters to counties, and public statements that Plaintiffs' past and future action to register to vote and to vote amounts to voter fraud.

123.  Defendants' violation caused and will cause harm to Plaintiffs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court:

(a) Declare that Defendants' actions described herein violate Plaintiffs' rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution; Section 2 of the Voting Rights Act, 52 U.S. § 10301; 52 U.S. § 10101; and 42 U.S.C. §1985(3);

(b) Enjoin Defendants, and all others acting in concert with them, from obtaining, disclosing, or using for any matter of voter registration, the administration of elections, or investigations regarding eligibility to vote, any records maintained by the Texas Department of Public Safety showing non-U.S. citizenship prior to the date of voter registration;

(c) Enjoin Defendants, and all others acting in concert with them, from investigating or instructing any other person or entity to investigate the eligibility to vote of any person identified through records obtained from the Texas Department of Public Safety that show non-U.S. citizenship prior to the date of voter registration;

(d) Enjoin Defendants, and all others acting in concert with them, from issuing or instructing any other person or entity to issue a letter, notice, or advisory (including Notices of Examination) regarding any matter of voter registration, the administration of elections, or eligibility to vote based on records maintained by the Texas Department of Public Safety showing non-U.S. citizenship of a voter prior to the date of voter registration.

(e) Order Defendant Johnson to refrain from cancelling, and/or to reinstate the voter registration of any voter following investigation into eligibility to vote based on records maintained by the Texas Department of Public Safety showing non-U.S. citizenship prior to the date of voter registration;

(f) Award Plaintiffs damages in a sum to be determined by the Court;

(g) Award Plaintiffs' attorney fees and costs incurred in this action under 42 U.S.C. §§ 1988, 52 U.S.C.A. § 10310, and any other applicable law;

(h) Grant such other and further relief as may be deemed just and proper.

Dated:  February 1, 2019

Respectfully Submitted,

**MEXICAN AMERICAN LEGAL
DEFENSE AND EDUCATIONAL FUND**

By:  */s/ Nina Perales*
Nina Perales (Tex. Bar No. 24005046);
Attorney-in-Charge
Ernest I. Herrera (Tex. Bar No. 24094718)
(SD of Tex. Bar No. 2867694)
*Alejandra Ávila (Tex. Bar No. 24089252)
(SD of Tex. Bar No. 2677912)
110 Broadway, Suite 300
San Antonio, Texas 78205
Phone:  (210) 224-5476
Facsimile:  (210) 224-5382
Email: nperales@maldef.org
*(*Pro Hac Vice application pending)*

Attorneys for Plaintiffs