IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| JULIETA GARIBAY, *et al.* § | |
| § | |
| Plaintiffs, § | |
| § | |
| vs. § | Civil Action No. 2:19-cv-00040 |
| § | |
| DAVID WHITLEY, *et al.* § | |
| § | |
| Defendants. § | |

### PLAINTIFFS' FIRST RESPONSE TO STATE DEFENDANTS' MOTION TO DISMISS OR TRANSFER

Plaintiffs Julieta Garibay, *et al.* hereby file this first response to State Defendants' Motion to Dismiss or in the Alternative Stay Litigation or Transfer Venue (Dkt. 10). As directed by the Court, Plaintiffs "file their response to that portion, and that portion only" of State Defendants' motion that seeks to dismiss or transfer the case under what is commonly referred-to as the first-to-file rule. *See* Dkt. 12 at 2.

### INTRODUCTION

This case is brought by individual voters.[1] Defendant counties are actively investigating their registered voters, and have threatened to remove Plaintiff U.S. citizen voters from the rolls if Plaintiffs do not provide proof of citizenship. Plaintiffs moved for a temporary restraining order because they have been threatened with removal from the voter rolls in less than three weeks. The central claims in this case involve race discrimination against Latino voters.

---

[1] The individual voter plaintiffs are joined by LUPE, a Plaintiff organization of over 8,000 members, many of whom are naturalized citizens and registered voters. The individual voter plaintiffs are also joined by organizations that conduct voter registration: UnidosUS (formerly NCLR), Southwest Voter Registration Education Project and Mi Familia Vota.

1

No earlier-filed action shares these characteristics.  This case is unique among the cases filed in the last several weeks, and this case is the only one that can afford Plaintiffs the immediate relief they seek.

## ARGUMENT

The first-to-file rule does not dictate transfer in this case for two important reasons.  First, this case does not substantially overlap with the action in the Western District of Texas.  Second, even if the Court concludes that there is some overlap, there is no risk of competing injunctions.  Third, there are compelling reasons that militate against transfer.

### I.  This Case Does not Substantially Overlap With the Action in the Western District of Texas.

The first-to-file rule is a discretionary doctrine that comes into play when two cases are so similar that dismissal or transfer will "avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result." *W. Gulf Mar. Ass'n v. ILA Deep Sea Local 24, S. Atl. & Gulf Coast Dist. of ILA, AFL-CIO*, 751 F.2d 721, 728 (5th Cir. 1985).  None of those considerations arise here because this case and an action filed several days earlier in the Western District of Texas only partially overlap and do not raise the specter of conflicting injunctive relief.

First, and most significant, this case is a challenge to government action that involves different plaintiffs and defendants when compared to the Western District action.[2]  By contrast, the first-to-file rule typically applies to private disputes in which the parties are the same.  *See Dillard v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 961 F.2d 1148, 1161 (5th Cir. 1992) (explaining "the so-called first-to-file rule, [] comes into play when a plaintiff files similar lawsuits in two different federal districts" or "where similar suits have been filed in two courts

---

[2] Among the 26 plaintiffs and defendants in the two cases, only two State Defendants overlap.  *Compare* ECF 4 *with* First Amended Complaint, *LULAC et al., v. Whitley et al.*, No. 5:19-cv-00074-FB (Feb. 1, 2019), ECF 2.

within the same district[.]").³ Indeed, all of the first-to-file cases on which State Defendants rely involved a single business dispute between the same plaintiffs and defendants.⁴ *See* State Mot. at 22-24; *see, e.g., Am. Sec. Ins. Co. v. Berry*, No. 1:01CV180-D-D, 2002 WL 449065, at *2 (N.D. Miss. Jan. 31, 2002) ("the issues and parties in the two cases are identical[.]"); *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 951 (5th Cir. 1997) ("Both the Original Action and the present case center on the question whether Save Power can proceed with foreclosure on any or all of its security interest in the assets of Pursuit under the terms of the Subordination Agreement.").

The cases cited by State Defendants consistently apply the first-to-file rule where a single dispute between two parties spawns two cases. In essence, party A sues party B in one forum and party B responds by suing party A in a different forum. In all of these first-to-file cases, the business dispute is the same and the parties are the same (or one business defendant stands in the shoes of another business defendant). Under these circumstances, the interests of comity and judicial administration dictate that the dispute between these same parties be allowed to continue in the original court. *See, e.g., Omega Natchiq, Inc. v. ATP Infrastructure Partners*, L.P., No. 2:14-CV-448, 2015 WL 1893515, at *3 (S.D. Tex. Apr. 27, 2015) ("Clearly, the issues raised by these three cases between the same two parties substantially overlap in that they all depend on whether the LOWLA lien was properly established and perfected against third parties and whether Omega may now collect ATP's debt against Infrastructure or the Platform.").

---

³ The Western District action also is not pending in the same federal judicial district as this action. *Id.*

⁴ State Defendants' reliance on *Youngblood v. JTH Tax Servs., Inc.* is misplaced. In that case, the court in the first-filed case declined to apply the first-to-file rule because venue was determined by the mandatory forum selection clause in the parties' contract. The outcome did not turn on the first-to-file rule, questions of comity or judicial efficiency. *See Youngblood v. JTH Tax Servs., Inc.,* No. SA:06-CA-380-XR, 2006 WL 1984656, at *2 (W.D. Tex. July 17, 2006).

Unlike the cases applying the first-to-file rule, in the present case Plaintiff individual voters seek, most immediately, a temporary restraining order enjoining county defendants from purging them from the voter rolls in response to challenge letters requesting citizenship documents. The court presiding over the Western District action cannot provide that relief because there are *neither* county defendants *nor* plaintiff voters who have received purge letters in that case.[5] Even if the Western District court grants the plaintiffs before it all the relief they request, Plaintiffs in this case will face removal from the voter rolls by their counties and the resulting loss of their voting rights. Quite simply, although the issues before this Court and the Western District touch on the voter list maintenance efforts of various state and local officials, the parties, the claims, and specific issues do not substantially overlap, and Plaintiffs' requested relief cannot be granted in the Western District action.

**II. Cases Touching on the Same Public Policy Routinely Proceed in Different Courts**

State Defendants are well aware that the mere existence of a first-filed case on a controversial public policy cannot dictate the venue for all later cases. In May 2017, Texas and Attorney General Ken Paxton sued Travis County, other local officials and a non-profit organization in the Austin Division of the Western District of Texas seeking a declaratory judgment that a recently-enacted state immigration statute (SB4) was constitutional. *See Texas v. Travis County*, No. 1:17-cv-00425-SS (W.D. Tex. May 7, 2017). Texas then tried to secure transfer to Austin of subsequent lawsuits filed against the State challenging SB4. The court in the San Antonio Division of the Western District denied the State's motion to transfer the later-filed SB4 challenges to Austin. *El Cenizo, et al. v. Texas et al.*, No. 5:17-cv-00404-OLG (W.D. Tex. June 6, 2017), ECF 27. Ultimately, the cases in the San Antonio Division "overtook" the

---

[5] *See First Amended Complaint, LULAC v. Whitley*, No. 5:19-cv-00074-FB (W.D. Tex. Feb. 1, 0219), ECF 2 at 5 (sole individual voter has not received a purge letter) and 6 (no county defendants).

first-filed action in the Austin Division. *Texas v. Travis Cty., Texas*, 910 F.3d 809, 811 n. 1 (5th Cir. 2018).  As in *El Cenizo*, the only common feature between this case and the Western District action – a challenge to the actions of two State Defendants – is not enough to dictate transfer of this case.

Federal courts around the country routinely entertain jurisdiction in cases, like this one, that challenge government action, even when there are other cases that challenge the same policy.  Courts have done so in cases involving the Department of Homeland Security's memorandum rescinding the 2012 Deferred Action for Childhood Arrivals (DACA) memorandum (commonly known as "the DACA rescission"), the Department of Commerce's decision to add a citizenship question to the 2020 Census (commonly known as "the Census citizenship question"), and the President's executive action banning certain foreign nationals from entering the country (commonly known as "the travel ban").  In the DACA rescission cases, for example, four different district courts entertained jurisdiction and ruled on the merits of plaintiffs' requests for preliminary injunction.  *See, e.g., Regents of Univ. of California v. United States Dep't of Homeland Sec.,* 279 F. Supp. 3d 1011 (N.D. Cal.), *Casa De Maryland v. U.S. Dep't of Homeland Sec.,* 284 F. Supp. 3d 758 (D. Md. 2018); *Trs. of Princeton Univ., et al. v. U.S., et al.,* No. 1:17-cv-02325 (D.D.C. Nov. 22, 2017); *Batalla Vidal v. Nielsen,* 279 F. Supp. 3d 401 (E.D.N.Y. 2018).  Similarly, different cases in different districts are proceeding through the courts on the Census citizenship question.  *See California et al. v. Ross et al.*, No. 3:18-cv-01865-RS (N.D. Ca. 2018); *Kravitz et al. v. U.S. Dep't of Commerce et al.*, No. 8:18-cv-01041-GJH (D.Md 2018) *consolidated with LUPE v. Ross*, No. 8:18-cv-01041-GJH (D.Md. 2018); *N.Y. et al. v. U.S. Dep't of Commerce et al.*, No. 1:18-cv-02921-JMF (S.D.N.Y. 2018) *consolidated with N.Y. Immigration Coal. v. U.S. Dep't of Commerce*, No. 1:18-cv-02921-JMF (S.D.N.Y.

5

2018); *City of San Jose et al. v. Ross et al.*, No. 3:18-cv-2279-RS (N.D. Ca. 2018); *Electronic Privacy Information Center v. U.S. Dep't of Commerce*, No. 18-cv-2711 (D.D.C. 2018).[6] Federal courts in various districts also heard the travel ban cases on the merits. *Hawaii v. Trump*, 265 F. Supp. 3d 1140 (D. Haw. 2017); *Int'l Refugee Assistance Project v. Trump*, 241 F. Supp. 3d 539 (D. Md. 2017). As in those cases, the present case challenges government action and does not involve the same parties litigating a private business dispute in two fora.

In addition, as in those cases, there is no risk of competing injunctions here. The first-to-file doctrine rests on the need to avoid rulings which may trench upon the authority of sister courts. *See Gregory-Portland Indep. Sch. Dist. v. Texas Ed. Agency*, 576 F.2d 81, 82 (5th Cir. 1978) ("By enjoining the [Texas Education Agency] from following the order [from the Eastern District], the Southern District seriously interfered with the power of the Eastern District Court to maintain the integrity of the order."); *West Gulf Maritime Ass'n v. ILA Deep Sea Local 24,* 751 F.2d 721, 728 (5th Cir.1985) ("[C]omity requires federal district courts—courts of coordinate jurisdiction and equal rank—to exercise care to avoid interference in each other's affairs."). In the DACA rescission cases, for example, courts ruled differently on the various plaintiffs' motions for preliminary injunction. *Compare Regents of Univ. of California v. United States Dep't of Homeland Sec.,* 279 F. Supp. 3d 1011 (N.D. Cal.) (granting temporary injunction) *with Trs. of Princeton Univ., et al. v. U.S., et al.,* No. 1:17-cv-02325 (D.D.C. Nov. 22, 2017) (granting permanent injunction) *and Casa De Maryland v. U.S. Dep't of Homeland Sec.,* 284 F. Supp. 3d 758 (D. Md. 2018) (denying preliminary injunction). Unlike *Gregory-Portland Indep. Sch. Dist.*, the court decisions in the DACA rescission cases did not involve courts issuing *conflicting* injunctions ordering the government to do two contrary actions. Even though the plaintiffs in

---

[6] In the census cases, cases in the same districts were consolidated (*e.g.*, both Maryland cases were consolidated). *See also* Litigation About the 2020 Census, https://www.brennancenter.org/analysis/2020-census-litigation (linking all e-court filings).

6

*Regents of Univ.* won and the plaintiffs in *Casa De Maryland* lost, DHS was not ordered to issue DACA renewals in one case and ordered to stop issuing DACA renewals in another case, for example. The plaintiffs simply lost in one action and won in another action.

Similarly here, this case does not present the risk of this Court interfering with a court order from the Western District. Assuming the Western District court denies the plaintiffs' motion for preliminary injunction and this Court grants Plaintiffs' emergency relief (or vice-versa), the plaintiffs win one case and lose another, but the two State Defendants will not be court-ordered to undertake actions conflicting with a sister court's order. One plaintiff group may simply not get the relief it requests, while another might. As discussed earlier, the counties are not even parties in the Western District litigation, and the scope of the remedy sought in this case is different and substantially larger.

### III.  Compelling Circumstances Militate Against Transfer

Courts in this circuit also exercise discretion and decline to transfer a second-filed action when "compelling circumstances" exist. *See 909 Corp. v. Vill. of Bolingbrook Police Pension Fund*, 741 F. Supp. 1290, 1292 (S.D. Tex. 1990). Here, compelling circumstances are present because the pending application for a temporary restraining order presents an urgent matter for the Court's consideration, and Plaintiffs will be stripped of their right to vote unless they can obtain immediate relief in this district. In addition, an overwhelming majority of persons affected by the Secretary of State's advisory reside in the Southern District. *See* TRO Ex. 37. More than half (a total of 50,557) of the voters on the list of 98,017 suspect voters issued by the Secretary of State reside in the Southern District of Texas. *Id*. By comparison, less than 20,000 voters reside in the Western District. *Id*.

Plaintiffs' claims belong before this Court. State Defendants' motion merely seeks to delay litigation brought by voters seeking immediate relief. The present case is not sufficiently similar to the Western District action, either in terms of parties, claims, or the relief sought.

## CONCLUSION

For these reasons, Plaintiffs respectfully request that the Court exercise its discretion in favor of Plaintiffs and deny Defendants' request to stay litigation or transfer venue.

Dated:  February 15, 2019                                     Respectfully Submitted,

**MEXICAN AMERICAN LEGAL DEFENSE AND EDUCATIONAL FUND**
By:  */s/ Nina Perales*
Nina Perales (Tex. Bar No. 24005046);
Attorney-in-Charge
Ernest I. Herrera (Tex. Bar No. 24094718)
(SD of Tex. Bar No. 2867694)
Alejandra Ávila (Tex. Bar No. 24089252)
(SD of Tex. Bar No. 2677912)
Jack Salmon (Tex. Bar No. 24068914)
(SD of Tex. Bar No. 1130532)
110 Broadway, Suite 300
San Antonio, Texas 78205
Phone:  (210) 224-5476
Facsimile:  (210) 224-5382
Email: nperales@maldef.org

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that, on the 15th day of February, 2019, I electronically filed the above and foregoing document using the CM/ECF system, which automatically sends notice and a copy of the filing to all counsel of record.

*/s/ Nina Perales*
Nina Perales